Commonwealth *v.* Moore, Appellant.

Argued June 13, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Stuart Schuman,* Assistant Defender, with him *Jonathan Miller,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Linda West Conley,* Assistant District Attorney, with her *James Taylor Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., November 16, 1973:

The only issue in this appeal is whether the Commonwealth presented sufficient evidence to convict appellant of the crime of attempted burglary.

On August 15, 1972, at 11:30 p.m., Rudolph Payne who resided at 4856 Brown Street, Philadelphia, looked out his bedroom window and saw a man he recognized as Mills attempting to pry open his neighbor's door. He also observed another man watching the house from across the street. He then saw Mills, who had failed in his attempt to open the door, and the other man go to the rear of the house where both men attempted to "get in" his back gate. Payne then summoned the police.

Upon their arrival, the police observed two men near a fence in the alley behind the Payne house. As the police approached, Mills fled and attempted to hide in

a hedge on 49th Street. The appellant turned west on-to 49th Street where he was apprehended approximately 30 feet from the gate. Upon examination, the officers discovered that the lock on Payne's door had been broken.

Appellant testified that at the time of the incident he was walking south on 49th Street to his home. He denied being at the Payne house, either in front or back, and stated that he never attempted to burglarize any house on Brown Street. The trial judge, sitting without a jury, found the defendant guilty.

"[T]he test in determining if the evidence is sufficient to sustain a criminal conviction is, whether accepting as true all of the evidence of the Commonwealth, and all reasonable inferences arising therefrom, upon which the [fact finder] could properly have reached its verdict, was it sufficient in law to prove beyond a reasonable doubt that the appellant was guilty of the crime for which he stands convicted." *Commonwealth v. Burton*, 450 Pa. 532, 534, 301 A. 2d 599 (1973). While guilt may never rest upon conjecture or surmise, a conviction may stand on circumstantial evidence. It is sufficient if the circumstances are consistent with criminal activity even though they might likewise be consistent with innocent behavior. *Commonwealth v. LaRue*, 381 Pa. 113, 112 A. 2d 362 (1955); *Commonwealth v. Gibson*, 201 Pa. Superior Ct. 573, 193 A. 2d 690 (1963).

Although the mere presence of a defendant at or near the scene of the crime, without more, is not a sufficient circumstance upon which guilt may be predicated, *Commonwealth v. Bailey*, 448 Pa. 224, 292 A. 2d 345 (1972); *Commonwealth v. Garrett*, 423 Pa. 8, 222 A. 2d 902 (1966); *Commonwealth v. Craft*, 215 Pa. Superior Ct. 477, 258 A. 2d 537 (1969),[1] we believe that the evi-

---

[1] Compare, however, *Commonwealth v. Thomas*, 450 Pa. 125, 299 A. 2d 226 (1973), a purse snatching case, in which the Court indi-

dence shows more than mere presence, and is sufficient to sustain the conviction.

The testimony of the complaining witness established that as Mills attempted to pry open the door, another man was watching the house. When Mills' efforts failed, *both* men went to the rear of the house and attempted to "get in" the gate at which time they were apprehended. Although Payne was unable to physically identify appellant as the other man, there is no room for doubt that it was the appellant because Payne observed the men from the time his suspicions were first aroused until their apprehension minutes later. The acts of appellant in accompanying Mills from the front of the house to the gate in the rear and attempting to get in the gate justifies an inference that appellant acted with Mills throughout the episode.

The judgment of sentence is affirmed.

DISSENTING OPINION BY SPAETH, J.:

I cannot agree with the majority's summary of the evidence.

Appellant was accused, and convicted, of being an accomplice to an attempt to enter the front of 4854 Brown Street, Philadelphia, the home of Estelle Turner. It was Mrs. Turner's next door neighbor, Mr. Rudolph Payne of 4856 Brown Street, who gave the crucial testimony at trial. According to Mr. Payne, late on the night of August 15, 1972, he saw a man (one "Mills") trying to break into Mrs. Turner's house and "[a]nother young man" who, he said, was with Mills. However, when asked, "Where was the other young man standing?", he replied: "Across the street. They had

cated that the fact that appellant approached and walked around the victim whose purse was grabbed by appellant's companion could create an inference that appellant was engaged in the robbery. The conviction was reversed on grounds other than the sufficiency of the evidence.

our pavement tore up at the time, and he was across the street, I imagine, watching." When asked, "Could you describe the man that was across the street?", he replied, "No, I couldn't." Mr. Payne described what next occurred as follows: ". . . and we saw Mr. Mills at my next door neighbor's door, prying it open. So I went to the telephone and called the police. And at that time they couldn't get in the front and they came around back and tried to get in my back gate." With respect to Mr. Payne's statement, "they came around back", it is clear that he, in fact, never saw anyone go "around back". When he called the police, he left his window ("went to the telephone") so that his observation of the chain of events was broken. The majority's statement that "Payne observed the men from the time his suspicions were first aroused until their apprehension minutes later" is contrary to the record. After calling the police, the next thing Mr. Payne did see was Mills at his back gate. Mr. Payne recognized Mills by his clothing. He testified that he did not see another person with Mills in the alley. He did see the police who came in response to his call apprehend two men, one of whom was appellant.

Appellant's apprehension near Mr. Payne's back gate does not establish that it was appellant who was in front of the houses minutes before. As the majority notes, evidence of mere presence at the scene of a crime is insufficient to support a verdict of guilty. If Mr. Payne had testified that he had seen the two men who were in front of the houses do something together (instead of being separated by a torn up street) and proceed together to the rear, there would be proof of more than appellant's mere presence at the scene. *Commonwealth v. Thomas*, 450 Pa. 125, 299 A. 2d 226 (1973) (defendant helped surround victim of a purse snatching). But Mr. Payne did not so testify; and the only way the majority can draw the "inference that the ap-

pellant acted with Mills throughout the entire episode" is by assuming facts that were not testified to, either by Mr. Payne or by anyone else.